# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO: 0647 5:21CR00739-001** |
| | ) | |
| Plaintiff, | ) | **JUDGE J. PHILLIP CALABRESE** |
| | ) | |
| -vs- | ) | |
| | ) | **DEFENDANT PAUL E. WINTERS'** |
| **PAUL E. WINTERS** | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |

Now comes Defendant, **PAUL E. WINTERS**, by and through his undersigned counsel, and hereby submits the following sentencing memorandum in the above-captioned matter.

Respectfully submitted,

/s/ Donald J. Malarcik
Donald J. Malarcik (0061902)
Attorney for Paul Winters
121 South Main Street, Suite 520
Akron, Ohio 44308
don@ohiodefensefirm.com
(330) 253-0785 (telephone)
(330) 253-7432 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2022 a copy of this Motion filed electronically, Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Donald J. Malarcik
Donald J. Malarcik (0061902)
Attorney for Paul Winters

1

## **MEMORANDUM**

Mr. Winters is forty-two (42) years old, he has no prior criminal record whatsoever. Presentence Report at paragraph 31. Mr. Winters was raised by his parents until his mother committed suicide in 1989 when he was 9 years old. Presentence Report at paragraph 36. Mr. Winters revealed that he found his mother in his home and contacted the police. Presentence Report at paragraph 37. Mr. Winters stated that he suffers from depression, anxiety, and post-traumatic stress disorder (PTSD), which mostly stem from his mother's death. Presentence Report at paragraph 44. Further, his mental health problems are attributed to his constant bullying while in school. *Id.* Mr. Winters currently experiences thoughts of suicide and self-harm. Presentence Report at paragraph 45. Since his arrest in the instant case, the defendant has experienced those thoughts approximately 3 to 4 times per month. *Id.* The defendant presently receives mental health counseling through Portage Path Behavioral Health in Akron, Ohio. Records received from the facility indicate that the defendant was diagnosed with major depressive disorder, complex PTSD, and pedophilic disorder on December 1, 2021. *Id.* Mr. Winters has demonstrated genuine remorse and fully accepted responsibility for his behavior. Presentence Report at paragraph 12.

A guideline sentence (121-151 months) is a vast over-criminalization of the wrong involved and is vastly disproportionate to the crime. Presentence Report at paragraph 53. Paul downloaded a group of images from the vast inventory of child pornography images on the internet. He did not have anything to do with the production of child pornography. He paid nothing to download the images, nor did he enter the commercial market for the images.

2

He did not join a community devoted to child pornography or child sexual exploitation.  A sentence above the five (5) year mandatory minimum would be unjust.

**Law**

Mr. Winters objects to the enhancements in the Presentence Report at paragraphs 16 through 19 and the adjusted level they create.  Mr. Winters invites this court to consider the concurrence and dissenting opinions of U.S. v. Walters, 775 F.3d 778 (6th Cir. 2015).  Judge White in her concurring opinion stated:

> HELENE N. WHITE, Circuit Judge, concurring.  As the dissent points out, the guidelines applicable to convictions under the Protect Act do not reflect the considered judgment of the Sentencing Commission, and in this regard differ from other Sentencing Guidelines.  To be sure, the Guidelines are not binding and judges are free to depart and vary from them.  But many judges are hesitant to second guess the Commission's judgment due to the presumed experience, expertise, and breadth of information possessed by the commission.  The appropriate judicial response in situations such as this one is not for appellate courts to reduce Guidelines sentences as a matter of course, but rather, for sentencing judges to recognize that Guidelines based on the Protect Act should be carefully scrutinized. Unfortunately, as the dissent observes, Walters' counsel did not bring to the district court's attention, or argue on appeal, that the Commission considers the sentence recommended here to be excessive. In the context of a sentencing proceeding in a child pornography case, competent counsel should be expected to bring to the district court's attention that the Guidelines do not, as in other contexts, reflect the presumed superior expertise and breadth of information of the Commission, and in fact are contrary to the Commission's considered judgment. That, however, is a matter Walters must properly raise in a petition under 28 U.S.C. § 2255.

Judge Merritt in dissent also noted that the Sentencing Commission itself conducted an extensive study and issued a three hundred and fifty (350) page report in 2012.  "The report asks Congress to remove the harsh Protect Act provision that ordered the Sentencing Commission in 2003 to write guidelines recommending to Judges the imposition of Sentences such as the twelve (12) plus year sentence in this case.  The report is based in part on the

3

refusal of a sizeable majority of Judges to follow the guidelines, and the opinion of experts in the field, including, psychologists, medical experts, and legal scholars who have studied the problem. The Commission study arrived at the conclusion that the present child pornography guidelines have no "rational basic", are "outmoded" do not "distinguish adequately among offenders based on their degrees of culpability," and have "enhancements," like the ones in this case, that are "outmoded and disproportionate."

**Concerns with the Application of U.S.S.G. 2G2.2**

In the Protect Act, Congress established a new mandatory minimum of five (5) years of imprisonment for existing child pornography trafficking and receipt offenses committed in violation of 18 U.S.C. §2252 and §2252(A). (See Protect Act 2003). In light of the new mandatory minimum penalty, the Sentencing Commission established a base offense level of 22 for those offenses, even though it produced a guideline range below the mandatory minimum for offenders in Criminal History Category I. The Commission modified its general approach for this mandatory minimum penalty because experience and data showed that several existing enhancements (e.g. use of a computer, material involving children under the age of 12, number of images) were applicable in almost every case. (U.S.S.G. App. C.), amend 665 (effective Nov. 1, 2004). Thus, the Commission set the base offense level at 22 with knowledge that the Chapter Two Calculations would lead to a range slightly above the mandatory minimum penalty for nearly all offenders thereby maintaining a consistent approach for determining sentencing ranges. (See *Id.*).

The major flaw respecting the above-mentioned enhancements (which are set forth in U.S.S.G §2G 2.2) is not the setting of the base offense level, but that the average Defendant

4

charts at the statutory maximum, regardless of Acceptance of Responsibility and Criminal History. The internet provides the typical means of obtaining child pornography, resulting in a two-level enhancement. *See* U.S.S.G. §2G2.2(b)(6). In the 2021 Federal Sentencing of Child Pornography Non-Production Offenses, the Commission found that in fiscal year 2019, over 95 percent of non-production child pornography offenders received enhancements for use of a computer. Furthermore, because of advancements in digital and mobile technology, defendants readily obtain 600 images with minimal effort resulting in a five-level increase. *See* U.S.S.G. §2G2.2(b)(7)(D). In the Sentencing Commission's findings, the median number of images per offender was 4,265, with some possessing and distributing millions of images and videos. Undoubtedly, as the Commission recognized, some of these images will contain material involving a prepubescent minor and/or material involving depictions of violence (which may not include "violence" per se, but simply consist of the prepubescent minor engaged in a sex act), thereby requiring a two-level increase. See U.S.S.G. §2G2.2(b)(2),(4). However, this enhancement was met in 99.4 percent of non-production child pornography offense in fiscal year 2019. Finally, because defendants generally distribute pornography in order to receive pornography in return, most defendants receive an enhancement for distribution of a thing of value. *See* U.S.S.G. §2G2.2(b)(3)(B). *See* "Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines."

In ***United States v. Grober,*** 595 F.Supp 382, (D. N.J. 2008), and ***United States v. Hanson***, 561 F.Supp 2d 1004 (E.D. Wis. 2008), these courts discussed the complications related to the type of sentencing process involved in a possession of child pornography case.

These opinions cited approvingly from "Deconstructing the Myth," regarding the flaws with §2G2.2.

The *Grober* court went on to discuss why §2G2.2 does not accomplish the sentencing goals of 18 U.S.C. §3533(a). First, §2G2.2 enhancements apply almost all the time and operate exponentially. Second, §2G2.2 enhancements promote sentencing disparity. Finally, there is a paucity of direct judicial experience to use in fashioning fair sentences. Ultimately, the *Grober* court did not apply the Guideline range the government had requested. Instead, citing the 18 U.S.C. §3553 factors and the mandatory minimum set by Congress guided the court; it imposed a 60-month sentence.

Also, in *United States v. Ontiveros*, 2008 WL 2927539 (E.D. Wis. July 24, 2008), the court cited the reasoning in *Hanson* to support its decision to depart from an advisory Guidelines range of 97 to 121 months down to 60 months - which represented the statutory minimum. The primary impetus for doing so was the courts' recognition that the factors presented before him were "present in almost all current child pornography cases, i.e., use of a computer, number of depictions, operated to increase the guideline range significantly above the mandatory minimum…" *Ontiveros*, 2008
WL 2937539 at *8.

These cases are reflective of the sentences federal judges routinely give to non-production child pornography offenders. In fiscal year 2019, the average sentence for non-production child pornography offenders was significantly lower than the average guideline minimum. The difference between the average guideline minimum (136

6

months) and average sentence imposed (103 months) was 33 months or 24.3 percent.

The view that these guidelines are unfair because the enhancements are almost always applicable is also shared by the Department of Justice. Pursuant to its obligation to annually submit to the Commission a report on the guidelines, its June 28, 2010 report included the following:

> We believe the Commission should complete its review of the sentencing guidelines applicable to child exploitation crimes and prepare a report to Congress that might include recommendations for reforming the current child exploitation guidelines. The goal of any such reform would be to update the guidelines to address changing technology and realities surrounding these offenses, improve the consistency of sentences across child exploitation crimes, and ensure that the sentences for certain child exploitation offenses adequately reflect the seriousness of the crimes.
>
> We think the report to Congress ought to recommend legislation that permits the Sentencing Commission to revise the sentencing guidelines for child pornography offenses and that suggests that any revised guidelines might look like. Over the last two decades, Congress has directed the Sentencing Commission to amend the guidelines for child pornography offenses on a number of occasions. See _Treasury, Postal Service, and General Government Appropriations Act of 1992_, Pub.L.102-141, Section 632, October 28, 1991, 105 Stat. 876; _Sex Crimes Against Children Prevention Act of 1995_, Pub. L. 104-71, December 23,1995, 109 Stat. 774; _Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003_ (the APROTECT Act@), Pub. L. 108-21, section 401, April 30, 2003, 117 Stat. 672-73. Collectively in these bills, Congress directed the Sentencing Commission to increase the base offense level and to add certain enhancements, including enhancements for the use of a computer in the commission of the crime and for the number of images involved in the crime.
>
> We believe changes in the use of technology and in the way these crimes are regularly carried out today suggest that the time is ripe for evaluating the current guidelines and considering whether reforms are warranted. Consideration ought to be given to updating many aspects of the child pornography sentencing guidelines to better calibrate the severity and culpability of defendants criminal conduct with the applicable guideline sentencing ranges. Because the current guidelines are largely mandated by

statute, though, legislation will be required to modify them.

The 2021 Sentencing Commission report examined three primary factors in sentencing non-production child pornography offenders: (1) content; (2) community; and (3) conduct. The Commission explained that these factors, contrary to the specific offense characteristics, are "a more effective means of distinguishing offenders based on culpability and dangerousness." (Commission Report pg. 44).

In regard to content and collection behavior, the report analyzed several different factors including the quantity, the age of the youngest victim depicted, gender of victims, method of receiving and or distributing child pornography, where the offender stored the child pornography, and whether sophisticated efforts were made to conceal the child pornography.

The Commission identified an offender as part of a child pornography community if they were in any of the following:

> (1) participating in an online group whose members interact with each other primarily via the internet through posts, discussions, and one-on-one chatting in a forum devoted to child pornography; (2) having conversations with at least one other individual about child pornography or the sexual abuse of a minor; (3) distributing or receiving child pornography via personal means (*e.g.,* text, email, or instant message); or (4) working with anther individual to produce child pornography. Report pg 38.

Despite the fact that more than forty percent (43.7%) of the non-production offenders sentenced in fiscal year 2019 belonged to a child pornography community, in the present case there is no evidence to suggest that Mr. Winters participated in such a community.

In its study regarding aggravating conduct, the Commission outlined three

8

components of sexually dangerous behavior: (1) contact sex offenses; (2) non-contact sex offenses; and (3) prior non-production child pornography offenses.  (Commission Report at pg. 40).  The Commission found that "nearly half (48%) of non-production child pornography offenders in fiscal year 2019 engaged in aggravating conduct, either prior to or concurrently with their instant federal child pornography offense."  (Commission Report at pg. 41).  In the case sub judice, Mr. Winters has no prior history of any aggravating conduct whatsoever.

The Commission found that offenders who participated in an online child pornography community or engaged in aggravating conduct, received longer sentences than offenders who did not engage in such conduct.  (Commission Report at pg 69).  The Commission found that offenders who did not engage in a child pornography community nor in aggravating conduct received the lowest average and median sentences (71 months and 63 months).  Comparatively, offenders who engaged in aggravating conduct received the highest average and median sentences of 134 months and 120 months.  (Commission Report at pg. 45).  As such, given the fact that Mr. Winters did not engage in a child pornography community nor aggravating conduct, he implores this court to apply the three factors recommended by the Commission to the present case.

Mr. Winter's case is another example of the application of the outmoded guideline enhancements in child pornography offenses resulting in a substantially unreasonable guideline sentence.  Mr. Winter's base offense level of 22 is increased ten (10) levels due to enhancements which occur in almost every child pornography case.  In the year 2022, it is particularly egregious that a two (2) level enhancement for use of a computer is still in

existence.

In **_United States v. Szymanski_**, (2011, 631 F.3d 794) the defendant entered a guilty plea to the one court charging receipt and distribution of child pornography in violation of 18 U.S.C. '2252(a)(2). After a sentencing hearing, the district court reluctantly sentenced **_Szymanksi_** to the statutory minimum of five years imprisonment. In a written Sentencing Memorandum, the district court first justified a downward variance from the Guidelines range of 70 to 87 months (citing, among other features of this case, the defendant's cooperation with authorities and his remorse), and then expressed grave reservations about the sentence. The court concluded that it was "handcuff[ed]" by the situation.

## CONCLUSION

Based upon the foregoing, Defendant believes that the statutory mandatory minimum sentence of sixty (60) months is sufficient, but not greater than necessary to comply with the purposes of sentencing. The offense characteristics which apply to Mr. Winters apply in almost every child pornography case and these enhancements are becoming increasingly disfavored by both the Sentencing Commission, the Department of Justice and many federal judges. Based on the characteristics and history of Mr. Winters, the downward variance to the statutory mandatory minimum of sixty (60) months is substantively reasonable and would fulfill the purposes and principles of sentencing. Defendant would request that this Court recommend that he serve any sentence imposed at the F.C.I. in Elkton, Ohio.

        Respectfully Submitted,

        <u>/s/ Donald J. Malarcik</u>
        DONALD J. MALARCIK (0061902)
        Attorney for Paul Winters
        121 S. Main St. Ste 520
        Akron, Ohio 44308
        don@ohiodefensefirm.com
        (330) 253-0785 (telephone)
        (330) 253-7432 (facsimile)